STATE OF NORTH CAROLINA v. JASON W. ALLEN

No. COA08-215

(Filed 21 October 2008)

**1. Assault— deadly weapon inflicting serious injuries—beating with hands—no fractures**

The trial court correctly denied defendant's motion to dismiss a charge of assault with a deadly weapon inflicting serious injury where defendant attacked the woman with whom he lived with his hands and fists and there were no fractures. Defendant was 25 years old and the victim was thirty-eight; defendant was seven inches taller and forty pounds heavier; defendant delivered repeated blows to the face and head, with the victim losing consciousness; and the victim suffered traumatic head injuries, including bleeding, swelling, and bruising and damage to her ear and mouth. The absence of fractures is relevant but not determinative.

**2. Larceny— motor vehicle—intent to permanently deprive owner of possession—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of felonious larceny of a motor vehicle where defendant left with the victim's automobile after beating her into unconsciousness, abandoned the vehicle in Virginia, and went to Florida to start a new life. Defendant's abandonment of the vehicle put it beyond his power to return and showed his indifference to whether the owner ever recovered it.

**3. Criminal Law— instructions—flight—no error**

The trial court did not err by giving an instruction on flight where defendant stole the victim's vehicle to facilitate his departure from the scene of an assault, defendant made no attempt to contact the authorities or obtain help for the victim, defendant abandoned the vehicle in Virginia, and he was arrested in Florida, where he had gone to start a new life.

**4. Assault— instructions—hands and feet as deadly weapon— no plain error**

There was no plain error in a prosecution for assault with a deadly weapon inflicting serious injury where defendant contended that the court had given a peremptory instruction on the use of hands and feet as a deadly weapon. Reading the instructions contextually and in their entirety, the court told the jury to determine whether defendant's hands and feet were a deadly weapon beyond a reasonable doubt based on the evidence. Furthermore, considering the evidence as well as the instruction, defendant did not establish the probability of a different result without the verdict.

**5. Criminal Law— deadlocked jury—deliberations resumed without statutory instruction—no plain error**

The trial court did not commit plain error or abuse its discretion when a jury reported that it could not reach a verdict and the court granted a recess and returned the jury for more deliberations without giving an instruction permitted by N.C.G.S. § 15A-1235(c), and the jury reached a verdict after an hour.

Appeal by defendant from judgment entered 11 June 2007 by Judge Phyllis Gorham in Onslow County Superior Court. Heard in the Court of Appeals 27 August 2008.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Kimberly D. Potter, for the State.*

*William D. Spence, for defendant-appellant.*

JACKSON, Judge.

On 13 June 2007, Jason W. Allen ("defendant") was convicted of assault with a deadly weapon inflicting serious injury, felonious larceny of a motor vehicle, and felonious possession of a stolen vehicle. The trial court arrested judgment on the charge of felonious posses-

sion of a stolen vehicle; the remaining charges were consolidated, and defendant was sentenced within the presumptive range to twenty-seven to forty-two months imprisonment. Defendant appeals. For the reasons stated below, we hold no error.

As of 7 September 2002, defendant had been living with Susan Clarkson ("Clarkson") in her Jacksonville, North Carolina residence for approximately two months. On 7 September 2002, Clarkson and defendant invited Clarkson's friend, George Wilhelm ("Wilhelm") for dinner. Throughout the evening, Clarkson, Wilhelm, and defendant ate food and drank various alcoholic beverages. At some point that evening, Clarkson and Wilhelm danced together. In response, defendant became upset and stated to Clarkson that it made him jealous.

Around midnight that evening, Clarkson hugged Wilhelm in her doorway as Wilhelm departed. Clarkson then began to walk through her home to her master bedroom when defendant struck her from behind in the back of her head with his fist. Clarkson testified that defendant then punched her in the face repeatedly, held her down by her neck, spat on her, and threw her around her bedroom onto the floor and the bed. Clarkson eventually lost consciousness from the repeated punches to her head.

When Clarkson regained consciousness, she called 911 and received medical treatment from EMS and at the hospital. Although Clarkson did not suffer any fractures as a result of the assault, her face remained extremely bruised and swollen for over a month.

Following defendant's assault, Clarkson learned that her 1995 Ford Explorer, valued at $10,000.00 and which had been at her residence on 7 September 2002, was missing. The car was recovered more than a week later in Norfolk, Virginia where defendant had driven and abandoned it. Clarkson did not give defendant permission to use her car on either 7 or 8 September 2002.

[1] On appeal, defendant first contends that the trial court erred by denying defendant's motion to dismiss the assault with a deadly weapon inflicting serious injury charge at the close of all the evidence because the evidence was insufficient to establish every element of the crime. Specifically, defendant argues that (1) the use of his hands and fists during his assault did not constitute the use of a deadly weapon; and (2) defendant did not inflict serious injury upon Clarkson. We disagree.

In order to survive a motion to dismiss based upon the sufficiency of the evidence, the State must present substantial evidence of each essential element of the charged offense and of defendant's being the perpetrator. *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Blake*, 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987) (internal citations and quotation marks omitted). The reviewing court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences that can be drawn from the evidence. *Fritsch*, 351 N.C. at 378-79, 526 S.E.2d at 455.

Defendant was convicted of assault with a deadly weapon inflicting serious injury pursuant to North Carolina General Statutes, section 14-32(b). "The elements of a charge [pursuant to section] 14-32(b) are (1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." *State v. Woods*, 126 N.C. App. 581, 592, 486 S.E.2d 255, 261 (1997) (quoting *State v. Aytche*, 98 N.C. App. 358, 366, 391 S.E.2d 43, 47 (1990)).

An assailant's hands may be considered deadly weapons for the purpose of the crime of assault with a deadly weapon inflicting serious injury depending upon the manner in which they were used and the relative size and condition of the parties. *See, e.g., State v. Harris*, 189 N.C. App. 49, 60, 657 S.E.2d 701, 708-09 (2008) (substantial evidence of defendant's use of his hands as a deadly weapon when the 175 pound defendant caused hand-print bruises on the 110 pound victim's arms, thighs, and buttocks, as well as bruises on the victim's neck which could have been the cause of the victim's swollen mouth, tongue, and throat); *State v. Rogers*, 153 N.C. App. 203, 211, 569 S.E.2d 657, 663 (2002) (substantial evidence of defendant's use of his hands as a deadly weapon when defendant was six feet two inches tall and weighed 165 pounds and struck victim in her face, breaking her nose, cheekbone, and jaw when victim was five feet three inches tall and weighed ninety-nine pounds); *State v. Grumbles*, 104 N.C. App. 766, 769-71, 411 S.E.2d 407, 409-10 (1991) (substantial evidence of defendant's use of his hands as a deadly weapon when the 175 pound defendant hit and choked the 107 pound victim leaving marks on her neck and causing facial swelling and a broken jaw).

In the case *sub judice*, the State presented evidence that defendant was twenty-five years old, seven inches taller, and forty pounds heavier than Clarkson who was thirty-eight years old. Defendant

struck repeated blows to Clarkson's head and face with his hands and fists. Clarkson suffered traumatic head injuries and extreme facial bruising and swelling, as well as bleeding from her left ear and nose. Additionally, Clarkson's left eye was swollen shut for over a month, the inside of her ear was damaged, and the inside of her mouth was "chewed up." As a result of defendant's blows to Clarkson's head and face, she lost consciousness. When she awoke, she remained disoriented.

Accordingly, we hold the State presented substantial evidence of defendant's use of his hands as deadly weapons and that Clarkson suffered severe injury as a result. That she did not ultimately suffer any fractures as a result of the assault is relevant, but not determinative as to whether she sustained severe injury. "Any weakness in the State's evidence or discrepancy between the State's evidence and [d]efendant's testimony was for the jury to consider." *Harris*, 189 N.C. App. at 60, 657 S.E.2d at 709. The trial court did not err in denying defendant's motion to dismiss the assault with a deadly weapon inflicting serious injury charge.

Defendant requests that we reconsider the analysis provided in the first footnote of *Harris* which maintains the use of hands as deadly weapons for purposes of the crime of assault with a deadly weapon and distinguishing the North Carolina Supreme Court's decision in *State v. Hinton*, 361 N.C. 207, 210, 639 S.E.2d 437, 439-40 (2007). We agree with the analysis set forth in *Harris*, and we hold that precedent set forth in *Hinton* does not control in the case *sub judice*.

In *Harris*, we specifically noted that the Supreme Court's holding in *Hinton* neither addressed nor distinguished the statutory rule of law germane to both *Harris* and the case *sub judice*, North Carolina General Statute, section 14-32(b). *See Harris*, 189 N.C. App. at 61, 657 S.E.2d at 708-09 n.1, *and* N.C. Gen. Stat. § 14-32(b) (2005).[1] In *Hinton*, our Supreme Court held that a defendant's hands are not a deadly weapon for purposes of the crime of robbery with a dangerous weapon as set forth in North Carolina General Statutes, section 14-87. *Hinton*, 361 N.C. at 208, 639 S.E.2d at 438. The Court explained

[i]t is true assault with a deadly weapon is a lesser included offense of robbery with a dangerous weapon. . . . However, the

---

1. We note that the relevant statutory citation in *Harris* refers to the 2007 version of the North Carolina General Statutes; however, section 14-32(b) was not amended between 2005 and 2007.

fact that assault with a deadly weapon is a lesser included offense of robbery with a dangerous weapon does not mean that the *scope* of the weapon elements must be identical for each offense. The fact that every dangerous weapon under N[orth Carolina General Statutes, section] 14-87 would also be a deadly weapon for purposes of assault with a deadly weapon does not necessitate that all deadly weapons for purposes of assault with a deadly weapon are dangerous weapons under N[orth Carolina General Statutes, section] 14-87. *The doctrine of lesser included offenses moves downstream, not upstream . . . .*

*Hinton*, 361 N.C. at 210, 639 S.E.2d at 439-40 (first emphasis in original) (second emphasis added). For these reasons, we decline to reconsider the first footnote in *Harris*. *Hinton* does not control the case *sub judice*.

**[2]** Defendant next contends that the trial court erred by denying defendant's motion to dismiss the felonious larceny of a motor vehicle charge at the close of all the evidence because the evidence was insufficient to establish every element of the crime. We disagree.

As stated above, in order to survive a motion to dismiss based on the sufficiency of the evidence, the State must present substantial evidence of each essential element of the charged offense and of defendant's being the perpetrator. *Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blake*, 319 N.C. at 604, 356 S.E.2d at 355 (internal citations and quotation marks omitted). The court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences that can be drawn from the evidence. *Fritsch*, 351 N.C. at 378-79, 526 S.E.2d at 455.

Defendant was convicted of felonious larceny of a motor vehicle in violation of North Carolina General Statutes, section 14-72(a). "The essential elements of a larceny are that the defendant[] (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of [the] property permanently." *State v. Perry*, 305 N.C. 225, 233, 287 S.E.2d 810, 815 (1982). North Carolina General Statutes, section 14-72(a) provides that when the value of the stolen goods exceeds $1,000.00, the crime is a Class H felony. *See* N.C. Gen. Stat. § 14-72(a) (2005).

Defendant limits his contention to the argument that the State did not present substantial evidence sufficient to reach the jury as to

defendant's intent to deprive Clarkson permanently of her property. However, our Supreme Court has explained

> the intent to permanently deprive need not be established by direct evidence but can be inferred from the surrounding circumstances. [Furthermore,] the abandonment of a vehicle . . . places it beyond a defendant's power to return the property and shows a total indifference as to whether the owner ever recovers it.

*State v. Kemmerlin*, 356 N.C. 446, 474, 573 S.E.2d 870, 889-90 (2002) (internal citations and quotation marks omitted).

In the case *sub judice*, the evidence tended to show that after the assault on 8 September 2002, defendant took Clarkson's Ford Explorer, valued at approximately $10,000.00, without her permission. Defendant drove Clarkson's vehicle to Norfolk, Virginia, where he remained for several days before making his way to Naples, Florida to start a new life. On 15 September 2002, the abandoned vehicle was located in Norfolk, Virginia. Defendant's abandonment of the vehicle in Norfolk, Virginia placed the vehicle beyond his power to return it to Clarkson and showed his indifference as to whether Clarkson ever recovered it. Therefore, in addition to establishing the other essential elements of felonious larceny of a motor vehicle, the State presented substantial evidence sufficient to allow an inference that defendant intended to permanently deprive Clarkson of her vehicle. The trial court did not err in denying defendant's motion to dismiss the felonious larceny of a motor vehicle charge.

**[3]** Next, defendant argues that the trial court erred by instructing the jury on defendant's flight. We disagree.

"This Court reviews jury instructions only for abuse of discretion. Abuse of discretion means manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision." *State v. Bagley*, 183 N.C. App. 514, 520, 644 S.E.2d 615, 622 (2007) (internal citations and quotation marks omitted). We review jury instructions contextually and in their entirety. *State v. Glynn*, 178 N.C. App. 689, 693, 632 S.E.2d 551, 554, *disc. rev. denied*, 360 N.C. 651, 637 S.E.2d 180 (2006). The party asserting error also bears the burden of showing that the jury was misled or that the verdict was affected by the instruction. *State v. Blizzard*, 169 N.C. App. 285, 297, 610 S.E.2d 245, 253 (2005).

"Mere evidence that [the] defendant left the scene of the crime is not enough to support an instruction on flight. There also must be

some evidence that [the] defendant took steps to avoid apprehension." *See State v. Lloyd,* 354 N.C. 76, 119, 552 S.E.2d 596, 625-26 (2001) (flight instruction upheld when the defendant left murder scene, failed to obtain help for victim, arranged surrender with police officers, but drove around and stopped at multiple gas stations to clear his head before turning himself in to police officers) (quoting *State v. Thompson,* 328 N.C. 477, 490, 402 S.E.2d 386, 392 (1991)); *State v. Grooms,* 353 N.C. 50, 80, 540 S.E.2d 713, 732 (2000), *cert. denied,* 534 U.S. 838, 151 L. Ed. 2d 54 (2001) (flight instruction upheld when defendant telephoned a friend from a bus station asking for twenty dollars to leave town). Recently, this Court noted that "an action that was not part of [d]efendant's normal pattern of behavior . . . could be viewed as a step to avoid apprehension." *State v. Shelly,* 181 N.C. App. 196, 209, 638 S.E.2d 516, 526, *disc. rev. denied,* 361 N.C. 367, 646 S.E.2d 768 (2007) (flight instruction upheld when defendant left the scene of a shooting and spent the night at the home of his cousin's girlfriend rather than returning home).

In the instant case, defendant stole Clarkson's vehicle to facilitate his departure from the scene of the assault. Defendant made no effort to contact the authorities, to obtain help for Clarkson, or to surrender himself. Instead, defendant drove from Jacksonville, North Carolina to Norfolk, Virginia where he abandoned Clarkson's vehicle. Defendant testified that after spending a few days in Norfolk, Virginia, he made his way to Naples, Florida to start a new life. On 8 September 2002, a warrant for defendant's arrest was issued in Jacksonville, North Carolina. Defendant was not arrested, however, until 23 August 2006 when he finally was located in Naples, Florida. On these facts, there was no error in the trial court's instruction on defendant's flight.

**[4]** Defendant next asserts that the trial court committed plain error in peremptorily instructing the jury that hands and fists are a deadly weapon. We disagree.

Defendant failed to object to the trial court's jury instructions at trial. As such, defendant failed to preserve this issue for appellate review and is limited to plain error review. *See* N.C. R. App. P. 10(b)(2), 10(c)(4) (2007), *and State v. Goforth,* 170 N.C. App. 584, 587, 614 S.E.2d 313, 315 (2005).

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error,

something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (brackets in original) (internal quotation marks omitted) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (emphasis in original) (second brackets in original) (footnote call numbers omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). The appellate court must be convinced upon review of the entire record that a different verdict probably would have been reached but for the error. *See State v. Cummings*, 361 N.C. 438, 470, 648 S.E.2d 788, 807 (2007); *Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79.

In the case *sub judice*, defendant takes issue with the trial court's statement that "[h]ands and fists are a deadly weapon." Reading this instruction alone, defendant's argument might have merit. However, we are bound to review jury instructions contextually and in their entirety. *Glynn*, 178 N.C. App. at 693, 632 S.E.2d at 554. In pertinent part, the trial court instructed the jury as follows:

The defendant has been charged with assault with a deadly weapon inflicting serious injury. For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt:

First, the defendant assaulted the victim by intentionally and without justification or excuse [] hitting the victim in the head and face several times. Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. You arrive at the intent of a person by such just and reasonable deductions from the circumstances given as a reasonably prudent person would ordinarily draw therefrom.

Second, the defendant used a deadly weapon. A deadly weapon is a weapon which is likely to cause death or serious bodily injury. Hands and fists are a deadly weapon.

*In determining whether hands and fists were a deadly weapon, you should consider* the nature of the hands and fists, the manner in which they were used and the size and strength of the defendant as compared to the victim.

Third, that the defendant inflicted serious injury upon the victim. Serious injury is such injury as causes great pain and suffering.

*If you find from the evidence beyond a reasonable doubt* that on or about September 8, 2002, the defendant intentionally hit the victim on the head and face several times with his hands and fists and *that his hands and fists were a deadly weapon* thereby inflicting serious injury upon the victim, nothing else appearing, it would be your duty to return a verdict of guilty. *If you do not so find or have a reasonable doubt as to one or more of these things, you must return a verdict of not guilty.*

(Emphasis added.) While it might have been more prudent for the trial court to instruct that hands and fists *have been* found to be a deadly weapon, when we read the instructions together, it becomes apparent that the trial court properly charged the jury to make the determination whether hands and fists were a deadly weapon beyond a reasonable doubt based on the evidence and in light of specified considerations. Thus, we cannot say that the singular statement complained of by defendant was such a *"fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done."* *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (emphasis in original), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)).

Furthermore, the State presented evidence that defendant was seven inches taller than Clarkson and outweighed her by forty pounds. Defendant repeatedly punched Clarkson's head and face causing severe injury including unconsciousness, disorientation, bleeding, and extreme swelling and bruising that lasted for a month. Defendant's own testimony established that he threw Clarkson to the ground, sat on top of her arms, and repeatedly hit her in the face "fast." Under our well-established standard of review, in view of the evidence presented as well as the jury instructions as a whole, defendant fails to establish that the verdict probably would have been different but for the singular instruction. We hold there is no plain error on these facts.

**STATE v. ALLEN**

[193 N.C. App. 375 (2008)]

**[5]** In his final argument, defendant contends that the trial court abused its discretion and committed plain error in failing to instruct the deadlocked jury as required by North Carolina General Statutes, section 15A-1235(c). "To find plain error, the error in a trial court's instructions to the jury must have been 'so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against [the defendant].' " *State v. Boston*, 191 N.C. App. 367, 643, 663 S.E.2d 886, 891 (2008) (brackets in original) (quoting *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993)). North Carolina General Statutes, section 15A-1235(c) expressly commits the power to require further deliberations within the trial court's discretion by stating "the judge *may* require the jury to continue its deliberations . . . ." N.C. Gen. Stat. § 15A-1235(c) (2007) (emphasis added). However, "[t]he judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals." *Id.*

In the instant case, after approximately two and one half hours of deliberation, the trial court received a note from the jury stating that the jury "cannot come to a consensus as a team on Count I . . . ." The trial court responded

> [w]hat I am going to do is I am going to send you back into the jury room to continue deliberating. Before that, however, I do want to ask you if you want to take an afternoon recess at this time. I'll be glad to give you a [fifteen] minute recess at this time.

After a fifteen minute recess, the jury resumed its deliberations for another hour at which time the jury returned a verdict of defendant's guilt. On these facts, we cannot say that the trial court abused its discretion. *See State v. Hagans*, 177 N.C. App. 17, 26, 628 S.E.2d 776, 783 (2006) (no abuse of discretion when trial court provided supplemental instructions and allowed jury to deliberate further after one day). Defendant's final argument is without merit.

No Error.

Judges BRYANT and ARROWOOD concur.